UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAYLOR J. GORDON,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:23-CV-508 JD |

## OPINION AND ORDER

Plaintiff Taylor Gordon appeals the denial of his claims for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. Although Mr. Gordon raises multiple issues, his principal contention is that the ALJ's residual functional capacity finding was incomplete. For the reasons below, the Court agrees with Mr. Gordon and will remand the case to the Agency for further consideration.

### A. Background

Mr. Gordon has not had substantial gainful employment since April 2018, the alleged onset date of his disability. He was then 41 years old. In 2021 he applied for disability insurance benefits and supplemental security income with the Social Security Administration, claiming that he was disabled because of kidney failure, chronic back pain, hypertension, depression, anxiety, insomnia, and muscle spasms. (R. at 86.) His claims were denied, leading to a review by an Administrative Law Judge ("ALJ").

The ALJ employed the five-step process to determine whether Mr. Gordon is disabled. As relevant here, the ALJ found at Step 2 that Mr. Gordon suffered several severe impairments:

degenerative disc disease of the lumbar spine, depression, unspecified bipolar disorder, hypertension, generalized anxiety disorder, social anxiety disorder, insomnia, myoclonus, and obstructive sleep apnea. (R. at 20.)

On the other hand, the ALJ found at Step 3 that none of these impairments by themselves or together with each other met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) For example, the ALJ determined that Mr. Gordon's physical impairments failed to meet the listing for 1.15 (disorder of the skeletal spine resulting in compromise of a nerve root(s)) or 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina). (*Id.*)

Likewise, the ALJ found that his mental impairments do not cause at least two "marked" limitations or one "extreme" limitation under the "paragraph B" criteria" so as to meet a listing. According to the ALJ, Mr. Gordon has no limitation in understanding, remembering, or applying information. (R. at 21.) He has only one marked limitation, which is in the area of social functioning. (*Id.*) He has two moderate limitations: the first one is with regard to concentrating, persisting, or maintaining pace (*id.*), and the second one relates to adapting or managing himself (R. at 22). In relation to concentration, persistence, and pace, the ALJ considered Mr. Gordon's reports that he could not finish what he started, and that, at its worst, he could pay attention for only ten minutes or so. (R. at 21.) At the same time, the ALJ observed that Mr. Gordon could read, create art, browse the internet, drive a car, and handle money. In making his findings, the ALJ was persuaded by the opinion of Psychologist Russel Coulter-Kern who examined Mr. Gordon and opined that, among other things, he "will . . . have mild to moderate difficulty maintaining attention and concentration," "will have moderate to severe difficulty responding appropriately to supervision and coworkers in a work setting," and "will have moderate to severe

difficulty coping appropriately to work pressures." (R. at 650.) Consistent with the regulations, the ALJ made clear that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 22); *see* SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 ("The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). The ALJ further recognized that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (R. at 22); *see* SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184.

At Step 4, the ALJ made his RFC determination. He found that Mr. Gordon

> has the residual functional capacity[1] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights. The claimant is able to perform simple, routine tasks. The claimant is able to have brief and superficial interactions with supervisors, coworkers, and the public. The claimant is able to tolerate only occasional changes in a routine work setting.

(R. at 22.)

In explaining his RFC determination, the ALJ addressed the opinion of the State psychological consultant. At the initial level of review, the psychological consultant opined that, among other things, Mr. Gordon is "moderately limited in his ability to maintain attention and concentration for extended periods." (R. at 28.) Overall, the psychological consultant found that

---

[1] "The [residual functional capacity] reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

3

Mr. Gordon can "understand, remember, and carry out detailed, but not complex tasks; relate on a superficial and ongoing basis with coworkers and supervisors; attend to tasks for a sufficient period to complete tasks; and manage the stresses involved with detailed work-related tasks." (*Id*.) The ALJ was not persuaded by these findings "because the medical evidence in the record supports greater limitations than recognized by the State agency psychological consultants." (*Id*.) The ALJ also noted that the consultant's finding that Mr. Gordon could "relate on a superficial and ongoing basis with coworkers and supervisors" contradicts the consultant's own finding that Mr. Gordon had only a mild limitation in interacting with others." (R. at 29.) In other words, according to the ALJ, Mr. Gordon's limitation in interacting with others is greater than opined by the consultant.

The ALJ also considered Dr. Coulter-Kern's opinion and found it persuasive. (*See* R. at 29 (Dr. Coulter-Kern's "opinion is generally supported by the medical evidence in the record and his own examination of [Mr. Gordon].") However, in adopting Dr. Coulter-Kern's opinion that Mr. Gordon has "*mild to moderate* difficulty maintaining attention and concentration" (R. at 29 (emphasis added)), the ALJ created an inconsistency with his own finding at Step 3 that Mr. Gordon has *moderate* limitations in concentration, persistence, and pace (R. at 21). The ALJ also adopted Dr. Coulter-Kern's opinion that Mr. Gordon has "moderate to severe difficulty responding appropriately to supervision and coworkers in a work setting, and moderate to severe coping appropriately to work pressures." (R. at 29.) The ALJ stated that Dr. Coulter-Kern's opinion was "accommodated for in residual functional capacity." (*Id*.)

When trying to ascertain from the Vocational Expert ("VE") whether there are jobs in the national economy that Mr. Gordon can perform, the ALJ fashioned the hypothetical person on his RFC finding. (R. at 72–73.) The VE answered that a person with the stated limitations would

4

be unable to perform any of Mr. Gordon's past relevant work as a psychiatric technician, psychiatric aide, or case worker. Still, according to the VE, there are jobs in the national economy that the hypothetical person could perform: a photocopy machine operator, a routing clerk, and housekeeping cleaner (primarily cleaning offices after business hours). On the basis of the VE's testimony, the ALJ concluded that "considering [Mr. Gordon's] age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 31.) Accordingly, the ALJ found that Mr. Gordon was not disabled. (*Id*.)

After the Appeals Council denied Mr. Gordon's request for review of the ALJ's decision, he appealed to this Court.

**B.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)).This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the

claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;[2]

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

---

[2] This step is not used for redetermining disability upon attaining age eighteen. *See* 20 C.F.R. § 416.987(b) ("We will not use the rule in § 416.920(b) for people who are doing substantial gainful activity . . . .")

7

**D. Discussion**

**(1)** *Concentration, Persistence, and Pace*

Mr. Gordon insists that the ALJ's RFC determination was legally erroneous and not supported by substantial evidence. (Pl.'s Rep. Br., DE 20 at 1.) He contends that the ALJ committed a reversible error because his RFC does not account for his moderate limitation in concentration, persistence, and pace.[3] Instead, the RFC limits him to "simple, routine tasks" without indicating how long he can perform such tasks, at what rate, and whether he has sufficient faculties to stay focused.

In his response, the Commissioner argues that Mr. Gordon overstates what an ALJ must include in their RFC findings and points out that the articulation bar for both the "logical bridge" and the evidence supporting the RFC determination is minimal. The Commissioner also maintains that Mr. Gordon has identified no evidence compelling greater limitation than what the ALJ assessed and thus failed in his burden to show that the ALJ's decision was not based on substantial evidence.

The Court agrees with Mr. Gordon that limiting the RFC to "simple, routine tasks" does not account for his deficits in concentration, persistence, and pace. In turn, the Court finds that

---

[3] Concentration, persistence, and pace refer

> to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

the hypothetical question based on an incomplete RFC tainted the VE's answer, undermining the ALJ's conclusion that there are jobs in the national economy that Mr. Gordon can perform.

In his order, the ALJ defined Mr. Gordon's RFC as follows:

> . . . the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights. The claimant is able to perform simple, routine tasks. The claimant is able to have brief and superficial interactions with supervisors, coworkers, and the public. The claimant is able to tolerate only occasional changes in a routine work setting.

(R. at 22.)

This RFC is incomplete as it does not account for Mr. Gordon's limitation in concentration, persistence, and pace. In discussing the "paragraph B" criteria under Step 3, the ALJ stated that Mr. Gordon has moderate[5] limitation in concentration, persistence, and pace (R. at 21–22), but, as noted above, he made clear that "the 'paragraph B' criteria are not a residual functional capacity assessment." (R. at 22.) As for the RFC itself, it is silent about concentration, persistence, and pace, both in terms of their explicit mention and in terms of an equivalent description. *Cf. Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2000) ("The law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work. . . . What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b); *accord.* 20 C.F.R. § 416.967(b)

[5] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

RFC.") (citations omitted). At best, concentration and attention, but not persistence or pace, are referenced in the ALJ's Step 4 discussion of Dr. Coulter-Kern's opinion: "Dr. Coulter-Kern opined that the claimant will currently have mild to moderate difficulty maintaining attention, and concentration . . . ." (R. at 29.) The ALJ states that "Dr. Coulter-Kern's opinion is persuasive and accommodated for in residual functional capacity." (*Id.*) So even if the Court were to agree that the RFC accommodates concentration, the RFC would still be silent about persistence and pace. This is despite the fact that at Step 3 the ALJ unequivocally stated that Mr. Gordon is moderately limited in concentration, persistence, and pace. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("In Lothridge's case, the residual functional capacity finding is not supported by substantial evidence in this one important respect. . . . [T]he finding appears inconsistent with the ALJ's earlier assessment of Lothridge's 'moderate' limitations in concentration, persistence, and pace."); *Cf. McGill v Colvin*, Case No. No. 1:14–cv–399, 2015 WL 224779, at *11 (S.D. Ind. Jan. 13, 2015) ("By neglecting to include any discussion of Plaintiff's mental impairments in the RFC analysis, the ALJ . . . plainly did not provide 'a more detailed' analysis of these impairments than he did at step 2, such that he failed to comply with SSR 96-8p, 1996 SSR LEXIS 5."). Given this deficiency in the RFC, the ALJ's hypothetical question to the VE would also be flawed, *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("Our caselaw emphasizes that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace.") (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*,

758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*; *see Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.") (collecting cases). Adequate concentration, persistence, and pace are required for competitive employment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i) ("To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task."). "Although it is not necessary that the ALJ use this precise terminology ('concentration, persistence, and pace'), we will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Yurt*, 758 F.3d at 857.

There is no evidence here that the VE reviewed Mr. Gordon's medical history so that he could limit relevant work despite the gaps in the hypothetical. Therefore, the ALJ should have stated an adequate hypothetical to the VE and, and correspondingly, an adequate RFC that justifies his ultimate conclusion that there are jobs in significant numbers in the national economy that Mr. Gordon can perform. Instead, the hypothetical refers just to Mr. Gordon's ability "to perform only simple, routine tasks." (R. at 72.) But the Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga*, 794 F.3d at 814

(quoting *Yurt*, 758 F.3d at 858–59); *see Winsted*, 923 F.3d at 477 ("We have also made clear that in most cases 'employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). Moreover, nothing in the ALJ's hypothetical nor in the RFC finding—for they are essentially one and the same—can be construed as accounting for limitations in concentration, persistence, and pace, be they moderate or mild to moderate. *See Lothridge*, 984 F.3d at 1233 ("We have repeatedly cautioned that 'someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be.'") Without a complete hypothetical, there is no assurance that the VE fully understood Mr. Gordon's limitations so as to provide correct information about the jobs he can do that are available in significant numbers in the national economy. *See id*. at 1234 ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). On remand, "the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620.

In defending the ALJ, the Commissioner misses the mark: he spills his ink on reassuring the Court that the ALJ's finding that Mr. Gordon suffers from only a moderate limitation to concentration, persistence, and pace is correct. While that might be true, the real problem is that the VE was asked to opine about the jobs in the national economy available to the hypothetical person without being informed of these limitations. Moreover, the Commissioner fails to explain how the hypos reliance on "simple, routine tasks" adequately conveys Mr. Gordon's limitations in concentration, persistence and pace. Consequently, the ALJ's reliance on the VE that there are jobs in the national economy that Mr. Gordon can perform is tainted with error, and the Court has no confidence that the ALJ's conclusion is based on substantial evidence, spartan though this standard may be, *see Warnell*, 97 F.4th at 1052 ("The threshold for substantial evidence 'is not high.'"). This is particularly so because the VE noted in his testimony, in response to the ALJ's question about how much off-task behavior employers generally tolerate, that being off-task more than 15% of the time would be "job prohibitive." (R. at 75.)  So, it would be critical for the VE to understand Mr. Gordon's limitations regarding concentration, persistence and pace as they would directly impact his ability to do other work in the national economy. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (when the ALJ considers off-task time but fails to explain whether the claimant was limited by any off-task allowances, the ALJ fails to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand). In his argument, the Commissioner also overlooks that the burden at step five—the step in question—is on the Commissioner. *See Young*, 362 F.3d at 1000. So it's of no avail for the Commissioner to argue that Mr. Gordon has identified no evidence supporting a more restrictive RFC; here, the Commissioner should have focused on what the ALJ, not Mr. Gordon, was required to do. In short, the Commissioner's response does not address the

13

requirement that all three areas of mental functioning—concentration, persistence, and pace—must be accounted for in the RFC.

The Seventh Circuit makes few exceptions for the requirement that all the claimant's limitations be included in the RFC so that the VE can base his consideration about the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). But none of these scenarios apply here given that nothing in the RFC can be read as a substitute for concentration, persistence, and pace. *See Lanigan v. Berryhill*, 865 F.3d 558, 565–566 (7th Cir. 2017) ("[T]he Commissioner argues that the ALJ's hypothetical effectively communicated, in different words, the idea that Lanigan had experienced 'moderate difficulties in concentration, persistence, or pace.' We cannot agree. The hypothetical begins by positing a person capable of performing 'simple, routine, and repetitive tasks.' These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work.")

### (2) *Mr. Gordon's other Arguments*

Mr. Gordon also claims that the ALJ failed to explain how the restriction in the RFC to "brief and superficial interactions with supervisors and coworkers" accommodates his marked social interaction limitation. Likewise, he insists that the ALJ's determination that he can "tolerate only occasional changes in routine work settings" conflicts with his finding that Mr. Gordon had a moderate limitation in adapting and managing himself. Finally, he submits that the ALJ did not accurately evaluate his subjective symptoms, applied a stricter standard of review than a preponderance of the evidence, and improperly relied on Mr. Gordon's daily activities to find him less limited than he alleged. While these arguments may have some merit, the ALJ's failure to properly articulate Mr. Gordon's limitations in concentration, persistence and pace in the RFC requires a remand of this case to the Agency. *Cf. DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate [the plaintiff's] limitations in concentration, persistence, and pace, we do not address [the plaintiff's] other arguments."). The Court's decision in this regard says nothing about the strength of Mr. Gordon's arguments and he is free to re-assert them on remand.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 4, 2024

                                                  /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court